UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-2744(DSD/HB)

Patricia Mraz,

             Plaintiff,

v.                                                    **ORDER**

Officers Justin Drogseth,
David Engel, Alan Spillers,
Barry Rogers, and JoEllen
Gordon, and Community Service
Officer Andrew Leko, in their
individual and official
capacities as police officers
of the Apple Valley Police,

             Defendants.

_____

Andrew M. Irlbeck, Esq., Paul Applebaum, Esq., 332
Minnesota Street, Suite W1610, St. Paul, MN 55101,
counsel for plaintiff.

Joseph E. Flynn, Esq., Vicki A. Hruby, Esq., Jamie L.
Guderian, Esq. and Jardine, Logan & O'Brien, PLLP, 8519
Eagle Point Boulevard, Suite 100, Lake Elmo, MN 55042,
counsel for defendants.

_____

This matter is before the court upon the motion for summary
judgment by defendants Justin Drogseth, David Engel, Alan Spillers,
Barry Rogers, and JoEllen Gordon, all officers of the Apple Valley
Police Department, Community Service Officer Andrew Leko, the Apple
Valley Police Department, and the City of Apple Valley.  Based on
a review of the file, record, and proceedings herein, and for the
following reasons, the court grants the motion.

**BACKGROUND**

This excessive-force dispute arises out of an incident at the Galaxie car wash in Apple Valley, Minnesota on January 6, 2013. Plaintiff Patricia Mraz and another customer, Amy Hamer, disagreed over whether Hamer was trying to unfairly move ahead of others in line.  The details of the dispute are contested but irrelevant for purposes of this motion.  Hamer ultimately called 911 and reported that a woman driving a silver Impala - later identified as Mraz - was beating on her window and taking pictures of her and her license plates.  Hruby Aff. Ex. 10, at 2.  Drogseth was nearby in a squad car and responded to the call.  Drogseth Dep. at 8:22-9:16. Based on the information provided by dispatch, Drogseth understood that a woman in a silver Impala was threatening another driver at the carwash.  Id. at 9:11-23, 16:11-21.  While Drogseth was en route, Leko, a community service officer[1] who happened to be at the car wash, resolved the dispute, and Hamer left the carwash.  Leko Dep. at 11:2-14, 12:16-13:10, 14:18-15:11.  When Drogseth arrived, Mraz was in her car, a silver Impala, waiting in line.

---

[1]  A community service officer (CSO) is a "non-sworn uniformed position within the Police Department."  Hruby Aff. Ex. 17, at 1. A CSO "assists and relieves law enforcement personnel in the performance of various law enforcement functions that do not require being armed."  Id.  CSOs also respond to "calls for police services which do not require the response of a sworn police officer."  Id.

Drogseth approached Mraz's vehicle and gestured for her to open the door.[2] Drogseth Dep. at 15:12-18. He told Mraz to "hop out of the car." Id. at 20:8-12. Mraz asked him why she should do so and he responded that he wanted to talk to her. Mraz Dep. at 217:7-11; Drogseth Dep. at 20:12-13; Hruby Aff. Ex. 12, at 13:20:58-21:01. Drogseth explained that he was responding to the 911 call and that he needed to determine what happened. Hruby Aff. Ex. 12, at 13:21:15-21:35. Mraz verbally challenged Drogseth and told him that he "needed to get off this." Id. at 13:21:32-33. Mraz admits that she did not get out of the car. Mraz Dep. at 217:11-13. Mraz also admits that she refused Drogseth's subsequent commands to exit the car. Id. at 222:12-20; see Hruby Aff. Ex. 12, at 13:21:34-21:42.

Drogseth ultimately took Mraz by the left wrist and, according to Mraz, "yank[ed]" her out of the car. Mraz Dep. at 222:9-10, 223:22-224:2.[3] Drogseth instructed her to turn around and face the other way, but Mraz admits she refused. Id. at 33:15-18; Mraz Dep. at 224:9-12. Drogseth then grabbed Mraz's arms and attempted to turn her so he could handcuff her. Drogseth Dep. at 34:5-11.

_____

[2] Most of the incident is captured on video from Drogseth's squad car camera, which includes audio. See Hruby Aff. Ex. 12. Given the angle at which Drogseth parked his squad car, however, the beginning of his encounter with Mraz is out of frame and captured only on audio. See id. at 13:20:58-21:42.

[3] This is a departure from Mraz's earlier allegation that Drogseth "leapt on [her], grabbed her by the wrist and wrenched her arm behind her back." Am. Compl. ¶ 27.

At this point, Mraz and Drogseth come into frame in the video. See Hruby Aff. Ex. 12, at 13:21:43. The video shows Mraz falling backward to the ground with Drogseth facing her and holding onto her left elbow. See id. at 13:21:44. Mraz claims that Drogseth "shoved" or "tackled" her to the ground. Mraz Dep. at 225:18-19; Am. Compl. ¶ 28. According to Drogseth, Mraz began flailing when he tried to turn her around, which caused her to backpedal and fall. Drogseth Dep. at 34:12-20. Drogseth claims he tried to slow Mraz's fall and gain control of her by holding on to her left arm. Id. at 36:3-11. The video, which captures Mraz mid-fall, supports Drogseth's version of events. Once in frame, Drogseth's movements are consistent with an attempt to restrain Mraz, rather than an attempt to harm her. See Hruby Aff. Ex. 12, at 13:21:43-47.

After struggling on the ground for several seconds, the video shows Drogseth pulling Mraz up and pushing her against the trunk of her car while holding both of her hands behind her back. See Hruby Aff. Ex. 12, at 13:21:44-58. Officers Engel and Spiller - both of whom were previously out of frame - then assist Drogseth in handcuffing Mraz. See id. at 13:22:09-47. The video shows Mraz physically and verbally resisting the officers during and after the handcuffing. See id. at 13:22:47-24:42. The officers finally place Mraz in a sitting position on the ground where she eventually regains her composure. See id. at 13:24:39-25:17.

Mraz was not arrested but was issued a citation for disorderly conduct and obstructing legal process.  Hruby Aff. Ex. 14, at 2. The charges were dismissed.  See id. at 1.  Mraz alleges that she suffered a torn ligament in her elbow, a deep-tissue bruise on her sternum, and several cuts and bruises on her hands and knees as a result of the incident.  Mraz Dep. at 236:24-237:2, 269:8-15.  She claims that she has experienced ongoing physical and emotional pain.

On September 5, 2013, Mraz filed a complaint in state court, and Defendants timely removed.  On June 24, 2014, Mraz filed an amended complaint alleging excessive force, unreasonable search and seizure, and battery against Drogseth, failure to intervene against Engel, Spillers, Rogers, Gordon, and Leko, and false imprisonment against all defendants.  Defendants move for summary judgment.

### DISCUSSION

## I.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could

cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 322-23.

## II.  Section 1983 Claims Against Drogseth

Mraz alleges that Drogseth used excessive force and detained her illegally in violation of 42 U.S.C. § 1983.[4]  Drogseth argues that he is immune from suit under the doctrine of qualified immunity.  "[Q]ualified immunity protects [law enforcement]

---

[4]  Mraz argues for the first time in her briefing that Engel and Spillers violated her constitutional right to be free from excessive force and unreasonable detention.  See Pl.'s Mem. at 10, 18.  The amended complaint, however, alleges such claims only against Drogseth.  Am. Compl. ¶¶ 40-43.  The court will construe the claims as pleaded.

officers from personal liability under § 1983 insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." Baribeau v. City of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010) (citation and internal quotation marks omitted).   The court applies the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."   Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether Drogseth is entitled to qualified immunity, the court first considers whether the alleged facts demonstrate that his conduct violated a constitutional right and, if so, whether the right claimed was clearly established at the time of the alleged injury.   Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009).   "If the answer to either question is no," then Drogseth is entitled to qualified immunity.   Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010).

## A.   Excessive Force

Mraz first claims that Drogseth violated her Fourth Amendment right to be free from unreasonable seizure.[5]   This right protects

---

[5]   Mraz's § 1983 claims are brought under both the Fourth and Fourteenth Amendments.   Am. Compl. ¶¶ 2, 40, 42, 44.   Where a particular Amendment "provides an explicit textual source of constitutional protection ... that Amendment, not the more
                                                      (continued...)

against the use of excessive force in the apprehension or detention of a person. <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." <u>Brown v. City of Golden Valley</u>, 574 F.3d 491, 496 (8th Cir. 2009) (citations and internal quotation marks omitted). "[T]he right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." <u>Cook v. City of Bella Villa</u>, 582 F.3d 840, 849 (8th Cir. 2009) (quoting <u>Graham</u>, 490 U.S. at 396).

When evaluating the reasonableness of an officer's use of force, the court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id.</u> (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 20-22 (1968)). The "calculus of reasonableness

---

[5] (...continued)
generalized notion of 'substantive due process,' must be the guide for analyzing the[] claims." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989). Here, Mraz's claims are properly considered under the Fourth Amendment and will not be analyzed under the more general Fourteenth Amendment.

8

must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97; see Brown, 574 F.3d at 496.

Although the violations for which Mraz was ultimately cited were minor, the situation was tense from the start and Mraz was highly uncooperative, verbally and physically resistant, and verbally combative. "View[ing] the facts in the light depicted by the videotape," Drogseth acted reasonably under the circumstances. Scott v. Harris, 550 U.S. 372, 381 (2007). Specifically, the video shows that Mraz was verbally aggressive and refused to comply with numerous commands to exit her car.[6] Once Mraz was out of the car and in frame, the video shows that Drogseth was trying to restrain rather than tackle her. Moreover, even if Drogseth forced Mraz to the ground, he was entitled to do so given her repeated refusal to comply with his commands. See Wertish v. Krueger, 433 F.3d 1062, 1065-66 (8th Cir. 2006) (holding that officer had an objectively reasonable basis to pull plaintiff from his truck, take him to the

---

[6]   Mraz alleges that she did not have time to comply with Drogseth's commands, but this allegation is belied by the record. See Hruby Aff. Ex. 12.   Indeed, Mraz admits that she repeatedly refused Drogseth's commands. Cf. Tillis v. City of Minneapolis, No. 12-324, 2013 WL 6062187, at *7 (D. Minn. Nov. 18, 2013) (denying summary judgment on excessive force claim when officer immediately grabbed plaintiff after ordering her to remove her children from the car).

ground, and handcuff him given plaintiff's refusal to comply with the officer's repeated order to exit the truck); Jones v. Boerger, No. 07-3009, 2008 WL 4371381, at *3 (D. Minn. Sept. 22, 2008) (determining that officer was entitled to tackle a suspect after he failed to respond to the officer's commands to stop).

Drogseth was also entitled to apply force to restrain Mraz once she was on the ground because she continued to struggle with him. Indeed, it took three officers to finally handcuff her and two officers to get her into a sitting position on the ground. Under these circumstances, no reasonable jury could find that Drogseth's use of force at any point during the incident was objectively unreasonable or violative of the Fourth Amendment. Moreover, because Drogseth's use of force was authorized, his conduct cannot form the basis of a battery claim. See Sang v. City of St. Paul, No. 09-455, 2010 WL 2346600, at *7 (D. Minn. June 8, 2010) ("[O]nly when a police officer uses excessive force may he be liable for battery under Minnesota law."). As a result, Drogseth is entitled to qualified immunity on the excessive-force claim and official immunity[7] on the battery claim.

---

[7] "Like qualified immunity, official immunity protects public officials, including police officers, from liability for state-law claims arising out of discretionary acts taken in the course of their official duties." Id. at *6.

**B.   Detention**

Mraz also argues that Drogseth violated her Fourth Amendment rights by detaining her without a reasonable basis.   Drogseth responds that he had a sufficient basis to detain Mraz given (1) the information he received from dispatch indicating that she was threatening another driver, and (2) her admitted failure to comply with his commands.   The court agrees.

Police may detain criminal suspects for investigation if officers have a "reasonable suspicion supported by articulable facts that criminal activity may be afoot."   United States v. Blackmon, 662 F.3d 981, 985 (8th Cir. 2011).   "This determination is based upon the totality of the circumstances."   Williams v. Decker, 767 F.3d 734, 739 (8th Cir. 2014). "Reasonable suspicion is a lower threshold than probable cause, and it requires considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Carpenter, 462 F.3d 981, 986 (8th Cir. 2006) (citation omitted).

Drogseth had a reasonable basis to suspect that Mraz had committed a crime, namely, disorderly conduct, based on the information conveyed by Hamer in the 911 call. Hamer reported that Mraz was threatening her, beating on her window, and taking photographs of her and her licence plates.   Hruby Aff. Ex. 10, at 2.   See Minn. Stat. § 609.72, subd. 1(3) (defining the crime of disorderly conduct as engaging in "abusive, boisterous, or noisy

11

conduct ... tending reasonably to arouse alarm"). Drogseth was entitled to rely on the information provided by Hamer in responding to the 911 call. See United States v. Terry, 400 F.3d 575, 580 (8th Cir. 2005) (finding that a 911 call provided officers with an adequate basis to detain the suspect); Fisher v. Wal-Mart Stores, 619 F.3d 811, 817 (8th Cir. 2010) (holding that officers are "entitled to rely on the veracity of information" provided by a victim in investigating alleged criminal activity). Further, a reasonable officer could have believed that Mraz's defiance during the investigation constituted obstruction of legal process. See Minn. Stat. § 609.50, subd. 1 (setting forth criteria for obstructing legal process including obstructing, hindering, or preventing the lawful execution of any legal process and resisting a peace officer engaged in the performance of official duties). Thus, Mraz's conduct after Drogseth arrived on the scene entitled him to detain her further.[8] Under these circumstances, Mraz's claim for unlawful detention fails. Mraz's false imprisonment claim also fails for the same reasons. See Anderson v. Franklin Cnty., 192 F.3d 1125, 1132 (8th Cir. 1999) (denying false imprisonment claim where officers had probable cause to arrest the plaintiff). As a result, summary judgment is warranted on Mraz's claims for illegal detention under § 1983 and for false imprisonment.

---

[8] Mraz complains about the length of time she was detained, but the video supports a finding that Mraz's own conduct prolonged her detention.

Summary judgment is likewise warranted as to Mraz's claims against the City of Apple Valley and the Apple Valley Police Department. "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005); see also Tilson v. Forrest City Police Dept., 28 F.3d 802, 806 (8th Cir. 1994) (holding that to find a police department liable under § 1983, there must be evidence of "direct participation in a constitutional deprivation."). Due to the absence of an underlying claim, Mraz cannot maintain a claim against either entity.

## III.  Failure to Intervene

An officer may be liable under § 1983 for failing to intervene when another officer applies excessive force.[9] Putman v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981). An officer may be liable for failing to intervene if "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." Nance v. Sammis, 586 F.3d 604, 612 (8th Cir. 2009) (quoting Floyd v. City of Detroit, 518 F.3d 398, 406 (6th Cir. 2008)). Because Drogesth did not violate Mraz's constitutional rights, Mraz cannot maintain a failure-to-intervene claim against

---

[9] The Eighth Circuit has not recognized a duty to intervene outside the context of excessive force. Livers. v. Schenck, 700 F.3d 340, 360 (8th Cir. 2012).

the other officers.  Even if there were a fact issue as to excessive force, dismissal of this claim still would be warranted because the record does not support a finding that Engel, Spillers, Rogers, or Gordon were in a position to prevent Drogseth's actions.  The video establishes that none of the officers were close enough to Mraz and Drogseth to have prevented the fall or the events immediately preceding the fall.

The failure-to-intervene claim likewise fails as to Leko because it is undisputed that he was not a sworn police officer. See Nance, 586 F.3d at 611 (8th Cir. 2009) (recognizing that a failure-to-intervene claim only applies to "one who is given the badge of authority of a police officer").  As a result, the failure-to-intervene claim is dismissed.


## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 36] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 15, 2015

s/David S. Doty
David S. Doty, Judge
United States District Court

14